**Nathaniel C. BEAN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 96–CM–1357.

District of Columbia Court of Appeals.

Argued March 11, 1998.

Decided April 2, 1998.

Bradley S. Cohen, Washington, DC, appointed by the court, for appellant.

James R. Costello, Jr., Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

SCHWELB, Associate Judge:

Nathaniel C. Bean was convicted by a jury of unlawful entry, in violation of D.C.Code § 22–3102 (1996). On appeal, Bean contends that the evidence was insufficient to support his conviction. We agree and reverse.

## I.

### THE FACTS [1]

During the summer and fall of 1995, Officer Octavius Moore of the Metropolitan Police Department was employed during his off-duty hours as a part-time security guard at the Park Chester Apartments in southeast Washington, D.C. At Bean's trial, Moore testified that on October 25, 1995, he saw Bean engage in what Moore believed to be a drug transaction on the premises of the Park Chester complex. Moore pursued Bean, who ran into the apartment of Teena McMillan, a resident of Park Chester who was apparently Bean's girlfriend. Moore testified that he told Ms. McMillan, in Bean's presence, that

---

1. The events leading to Bean's arrest were the subject of considerable dispute by the parties.

We recite only those facts relevant to our disposition of Bean's appeal.

Bean was barred from the complex. Moore also prepared a formal written "barring notice." [2]

Moore testified that two days later, on October 27, 1995, at about 7:15 p.m., he saw Bean on the street outside the Park Chester Apartments and reminded him that he was barred from the complex. Later that evening, Moore observed Bean with a group of men standing in a hallway, apparently taking shelter from the rain. Because Bean appeared to be "loitering," Moore arrested him for violating the barring order. There was no evidence presented as to the reason (or lack of reason) for Bean's presence on the premises, or as to whether the persons with whom he was standing were residents of Park Chester Apartments. Moore did not testify how long Bean had been at the complex prior to his arrest.

Sara Parker, an assistant property manager at Park Chester Apartments at the time of the relevant events, also testified for the prosecution. Ms. Parker explained that a violation of a "barring order" occurred if a previously barred individual was present on the premises for no legitimate reason. A barring order did not apply where such an individual was visiting a resident.

## II.

### LEGAL DISCUSSION

In assessing Bean's claim of evidentiary insufficiency,[3] we must view the evidence in the light most favorable to the prosecution, according due weight to the right of the jury to weigh the evidence, determine the credibility of the witnesses, and draw reasonable inferences. *See Bernard v. United States,* 575 A.2d 1191, 1194 (D.C.1990). Applying that standard, we must affirm Bean's conviction if we conclude that an impartial juror could find the evidence sufficient beyond a reasonable doubt. *See Patterson v. United States,* 479 A.2d 335, 338 (D.C.1984). The evidence is insufficient as a matter of law, however, if "in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Roy v. United States,* 652 A.2d 1098, 1103 (D.C.1995) (citation omitted).

"Traditionally, the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off." *Martin v. City of Struthers,* 319 U.S. 141, 147, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943); *see also Bowman v. United States,* 212 A.2d 610, 611 (D.C.1965) (quoting *Martin* ).[4] In the District of Columbia, this policy is expressed in D.C.Code § 22–3102, which proscribes "unlawful entry." In order to establish that Bean violated § 22–3102, the prosecution was required to prove that he entered the premises "against the will of the lawful occupant or of the person lawfully in charge thereof." D.C.Code § 22–3101; *see Bowman, supra,* 212 A.2d at 611–12; *McGloin, supra* note 4, 232 A.2d at 91; *see also Kelly v. United States,* 348 A.2d 884, 885–87 (D.C.1975) (violation of "barring notice" issued by hotel management).

In the present case, Bean was not barred unconditionally from the Park Chester Apartments. According to the testimony of Sara Parker, a barred individual was not precluded from coming to the premises for a legitimate reason, *e.g.,* in order to visit a

---

**2.** Moore testified that in July 1995, he verbally barred Bean from the complex because Bean was standing around in a group of people who had alcoholic beverages.

**3.** At the conclusion of the government's case, Bean's counsel made an oral motion for judgment of acquittal (MJOA). The judge denied the motion. Bean claims that he renewed his motion after all of the evidence had been presented. There is a jacket entry supporting this assertion, but no second *MJOA is reflected in the* transcript. Bean then filed a post-trial motion for a new trial or to "enter a judgment of acquittal."

In a footnote to its brief on appeal, the government states that this motion "may have constituted a renewal of his MJOA, sufficient to preserve his sufficiency claim." Given the government's near-concession, as well as our extreme reluctance in any case to affirm a conviction which is based on insufficient evidence of guilt, *cf. Outlaw v. United States,* 632 A.2d 408, 410 (D.C. 1993), *cert. denied,* 510 U.S. 1205, 114 S.Ct. 1326, 127 L.Ed.2d 674 (1994), we address Bean's insufficiency claim on the merits.

**4.** *This is not to suggest that a warning is required in all cases. McGloin v. United States,* 232 A.2d 90, 91 (D.C.1967).

tenant. Therefore, in order to establish that Bean was present against the will of the person lawfully in charge, the prosecution was required to prove beyond a reasonable doubt that Bean was not on the premises for a legitimate reason, *e.g.*, to visit a resident. At oral argument, counsel for the government acknowledged that the prosecution had the burden of proof on this issue.

It appears to be undisputed that at the time Bean was arrested, it was raining outside. Bean and his companions were apparently taking shelter from the rain. The prosecution presented no evidence as to whether the persons with whom Bean was associating were residents of the complex and, if so, whether Bean was the guest of one or more of them. So far as we can determine from the record, Bean was not asked his purpose for being there. Moore testified that Bean appeared to be "loitering," but he did not state how long Bean had been on the premises, nor did he claim that, aside from being there, Bean was doing anything at all untoward.

With commendable candor, the prosecutor conceded at argument that the case against Bean was "thin." The testimony relevant to the dispositive issue was indeed skimpy and, on this record, one is left to speculate as to whether or not Bean was legitimately at the complex in order to visit Ms. McMillan or some other resident. Accordingly, we conclude as a matter of law that the prosecution failed to prove Bean's guilt beyond a reasonable doubt.

### III.

### CONCLUSION

For the foregoing reasons, Bean's conviction is reversed, and the case is remanded to the trial court with directions to enter a judgment of acquittal.

*So ordered.*[5]

---

5. In light of our disposition, we do not reach Bean's contention that the trial judge erred by admitting, over defense objection, Officer Moore's testimony that, two days prior to Bean's arrest, Bean engaged in what Moore believed to be a drug transaction.