# State of Vermont v. April Dixon

[725 A.2d 920]

No. 97-166

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 8, 1999

*Dale O. Gray,* Caledonia County State's Attorney, and *Alan M. Singer,* Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Robert Appel,* Defender General, *Anna Saxman,* Appellate Attorney, and *Karen Misbach,* Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

*Stuart M. Bennett,* Shelburne, for Amicus Curiae Vermont Apartment Owners Ass'n.

*John J. McCullough III,* Vermont Legal Aid, Inc., Montpelier, for Amici Curiae Vermont Low Income Advocacy Council and Vermont Tenants, Inc.

**Dooley, J.** Defendant April Dixon entered a conditional guilty plea to a charge of criminal trespass in violation of 13 V.S.A. § 3705(a)(1), after the district court denied her motion to dismiss. On appeal, she

contends that the notice of trespass issued by a landlord is insufficient to sustain a conviction based on her presence in the common areas of an apartment building while on a visit to the daughter of one of the landlord's tenants. We agree and reverse.

The facts as assumed by the trial court in considering defendant's motion to dismiss are not in dispute, and we therefore summarize the pertinent determinations from the trial court's decision. Prior to the events at issue in this case defendant had been a tenant in an apartment building in St. Johnsbury owned by David Pezdirtz. The building contains 13 apartments, access to which is through a common hallway and stairs. Perceiving that defendant was responsible for certain disturbances that had occurred at the apartment building,* Pezdirtz decided to ban defendant from the building and caused a notice against trespass to be served on her on October 18, 1996. Among those Pezdirtz informed of this action was Mary Noyes, a tenant in the building. Defendant maintained a friendship with Mary Noyes' daughter, Catherine Noyes, who was not herself a tenant but who was living in her mother's apartment on a temporary basis with the knowledge and consent of Pezdirtz. Police responded to a call at the apartment building on December 5, 1996 and found defendant standing outside of the building but on the premises. She told the police that she was aware of the trespass notice served on her at Pezdirtz's direction but that she was on the premises visiting friends.

Defendant was charged with trespass in violation of 13 V.S.A. § 3705(a)(1). Section 3705 of Title 13 states, in part, that:

> (a) A person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority or the consent of the person in lawful possession, he enters or remains on any land or in any place as to which notice against trespass is given by:

---

*Pezdirtz testified at the hearing on the dismissal motion that he had experienced "a lot of trouble" with defendant and "had to evict her," explaining:

> She had been causing trouble with a lot of the other tenants. We had tenants threaten to leave because of her and her boyfriend at the time who had threatened her. She had put a no trespass order against the man who was the manager of the unit. We had one person who was the manager, David Timson, and I believe at one point they had cross purposes unlawful trespass against each other on individual apartments, and she created a lot of problems, and we did not want her on the property . . . .

Tr. of 2/20/97 hr'g at 6.

(1) Actual communication by the person in lawful possession or his agent or by a law enforcement officer acting on behalf of such person or his agent . . . .

Defendant moved to dismiss the action pursuant to V.R.Cr.P. 12(d), alleging that the State was unable to prove one element of the offense: that the landlord was "in lawful possession" of the apartment's parking area, and therefore authorized to issue the notice of trespass. The trial court denied the motion, and defendant entered a conditional plea of nolo contendere, reserving the right to appeal the denial of her motion to dismiss. This appeal followed.

■ The standard for addressing a motion to dismiss for lack of a prima facie case under Rule 12(d) is "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995). We must determine whether the State met its burden in demonstrating that it had "substantial, admissible evidence as to the elements of the offense challenged by the defendant's motion." *Id.* (quoting V.R.Cr.P. 12(d)(2)). We agree with defendant that proof of the landlord's having issued a notice against trespass is insufficient to sustain a conviction in these circumstances.

When required to construe a statute, "our overriding objective must be to effectuate the intent of the Legislature." *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996). Our first step in ascertaining the Legislature's intent "is to look at the language of the statute itself [because] [w]e presume the Legislature intended the plain, ordinary meaning of the language." *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). A review of the plain meaning of § 3705(a)(1) reveals that the State must prove four elements to obtain a conviction under the statute: (1) that a notice against trespass has been given to defendant by "the person in lawful possession" or an agent of that person; (2) that defendant entered or remained on land or in a place in the face of the notice; (3) that defendant had no legal authority to do so; and (4) that defendant did not have consent of the person in lawful possession.

Defendant urges us to find in her favor based on a determination that the landlord was not in lawful possession and thus could not generate the requisite notice against trespass. We conclude, however, that whether the landlord was in lawful possession is irrelevant

because the tenant, Mary Noyes, was clearly also in lawful possession and the State has produced no evidence to suggest defendant lacked her consent to be on the premises.

 Section 3705(a)(1) does not define many of its essential terms, leaving them to be interpreted here in the context of the common law governing landlord-tenant relations. We must assume that the statutory terminology is consistent with the common law, see *State v. Oliver*, 151 Vt. 626, 627, 563 A.2d 1002, 1003 (1989), also taking care to construe the statute strictly and in a manner most favorable to the accused so that we do not create criminal liability outside the contemplation of the Legislature. See *State v. Galusha*, 164 Vt. 91, 93, 665 A.2d 595, 596 (1995).

The common law is clear that the landlord may not prevent invitees or licensees of the tenant from entering the tenant's premises by passing through the common area. See *Folgueras v. Hassle*, 331 F. Supp. 615, 625 (W.D. Mich. 1971); *State v. Schaffel*, 229 A.2d 552, 561-62 (Conn. Cir. Ct. 1966); *People v. Rynberk*, 415 N.E.2d 1087, 1091 (Ill. App. Ct. 1980). Moreover, the law is clear that an invitee or licensee who does so, even after a specific prohibition by the landlord, is not a trespasser and does not violate a criminal trespass statute. See *L.D.L. v. State*, 569 So. 2d 1310, 1312 (Fla. Dist. Ct. App. 1990); *Arbee v. Collins*, 463 S.E.2d 922, 925 (Ga. Ct. App. 1995); *Ellis v. Knowles*, 81 S.E.2d 884, 885 (Ga. Ct. App. 1954); *Commonwealth v. Richardson*, 48 N.E.2d 678, 683 (Mass. 1943); *Morra v. Hill*, 175 A.2d 824, 825-26 (N.H. 1961); *Williams v. Lubbering*, 73 N.J.L. 317, 319 (N.J. 1906); *City of Kent v. Hermann*, 1996 WL 210780, at 3 (Ohio Ct. App. 1996). Although a tenant may expressly or impliedly agree with the landlord to limit the rights of third persons entering the premises, and a landlord may impose reasonable regulations on the use of common areas "'for the protection of the premises themselves or of other tenants,'" *Arbee*, 463 S.E.2d at 925 n.1 (quoting Restatement (Second) of Torts § 189 cmt. c (1965)), that was not the basis of this prosecution.

Rather, the State filed and pursued this case solely on the theory that only the nonconsent of the landlord was needed for a conviction and that the consent of a tenant to defendant's presence in the common area was irrelevant. The information stated that defendant was on the premises "without legal authority or the consent of the person in possession, David Pezdirtz." The affidavit of the arresting officer indicates that he went to the apartment building in response to a call from Pezdirtz stating that defendant was at the apartment

building. In response to the motion to dismiss, the State offered only the evidence of Pezdirtz that defendant was on the premises without his consent.

The State had an obligation to file a "plain, concise, and definite written statement of the essential facts constituting the offense charged," V.R.Cr.P. 7(b); see *State v. Kreth*, 150 Vt. 406, 407, 553 A.2d 554, 555 (1988), and to prove the facts necessary to constitute the crime. See *State v. Baker*, 154 Vt. 411, 414, 579 A.2d 479, 480 (1990). It did not discharge its duty to plead or prove the absence of tenant consent, even when the tenant involved became known.

This case is virtually identical to two reported decisions, *Bean v. United States*, 709 A.2d 85 (D.C. Ct. App. 1998), and *L.D.L.*, and both involve similar statutes. In *Bean*, defendant was barred from an apartment complex and was arrested in the common area for returning to the complex. Unlike this case, the landlord and prosecution admitted that a tenant could consent to defendant's presence, but failed to show there was no consent. The District of Columbia Court of Appeals reversed defendant's conviction because "in order to establish that Bean was present against the will of the person lawfully in charge, the prosecution was required to prove beyond a reasonable doubt that Bean was not on the premises for a legitimate reason, *e.g.*, to visit a resident." *Bean*, 709 A.2d at 87.

In *L.D.L.*, a juvenile was found in the common area of an apartment complex from which he had been banned. His brother, grandmother and friend lived in the complex. Although the trial court found that the State failed to prove that L.D.L. "wasn't there by invitation or by implied invitation of the lessee," it ruled that only the lessee's permission mattered. *L.D.L.*, 569 So. 2d at 1312. The Florida Court of Appeals reversed the criminal conviction because the "landlord generally does not have the right to deny entry to persons a tenant has invited to come onto his property." *Id.*

■ For the reasons that were determinative in *Bean* and *L.D.L.*, we conclude that the State failed to show that it could prevent the grant of a motion for acquittal at trial. See V.R.Cr.P. 12(d)(2). The trial court should have granted the motion to dismiss.

*Reversed.*